JOHN DYE, Respondent, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Appellant.

While, when in an action against a railroad or municipal corporation to recover damages for injuries alleged to have been caused by defendant's negligence, it is important to show that defendant had notice of the dangerous character of the defect which caused the injury, testimony is competent to prove other similar accidents, such evidence is not competent where it can have no bearing upon the issues presented.

Where, therefore, in an action by an employe against a railroad company to recover damages for injuries sustained by plaintiff when engaged in coupling two cars, occasioned by the overlapping of the dead-woods of the cars, defendant claimed that plaintiff had full knowledge of and took the chances of the danger, and gave evidence to the effect that it used on its road different kinds of cars, some without any dead-woods and that switchmen in its employ had frequently to make couplings of cars, the dead-woods of which overlapped, *held,* that the admission of testimony showing that similar accidents had occurred on defendant's road was error.

(Argued December 4, 1891; decided December 22, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered on an order made December 9, 1889, which affirmed a judgment in favor of the plaintiff entered upon a verdict.

This action was brought to recover damages for personal injuries sustained by the plaintiff, an employe of the defendant, alleged to have been caused by defendant's negligence.

The accident happened on the 17th of October, 1887, while plaintiff was engaged in coupling cars. The cars which he was attempting to couple he described as a jimmy and a chronic car. The jimmy was a four-wheeled coal car, considerably lower than the eight-wheeled car, which he called a chronic car. So, when the two cars came together, the dead-woods of the eight-wheeled car, instead of meeting the dead-woods of the jimmy, thus keeping the cars at a sufficient distance apart to enable a person to stand between them, overlapped, causing the cars to come so nearly together that the plaintiff was severely injured.

The plaintiff commenced working on railroads about fifteen years prior to the accident, during which time he had served

in different capacities, such as brakeman, baggageman and switchman. At the time of the accident, and for several months prior, he had been a member of a switching gang connected with the work of making up and distributing trains between the yard at East Buffalo and the yard at the foot of Erie street. At the East Buffalo yard the trains coming from the east are broken up and distributed by switch engines and their crews. Loaded and unloaded cars are brought from different points in the city, including other railroad yards, by the switch engines to the yard at East Buffalo, and are there made up into trains to go east. The crews connected with the switch engines do all the switching, coupling and uncoupling required in this business, and it was of such a crew that the plaintiff was a member. It appears that on defendant's railroad there are a number of different kinds of cars in use, on some of which there are no dead-woods at all, while on others there are short dead-woods. And the evidence tended to show that it was a matter of frequent occurrence that when the jimmies and the eight-wheeled cars came together the dead-woods would overlap, and the switchmen, in doing their work, had daily to make couplings between such cars. The plaintiff, however, denied having any knowledge that such dead-woods would overlap, prior to the happening of the accident.

Further facts are stated in the opinion, which is given in full.

" An exception taken to the admission of certain testimony against the objection of the appellant requires a reversal of the judgment.

" The defendant did not attempt to controvert the claim of the plaintiff, that his injury was occasioned by the overlapping of the dead-woods of the jimmy and the eight-wheeled car, thus permitting the cars to come so close together as to necessarily severely injure a person who happened to be between them at the time; nor was it pretended that the difference in the height of the dead-woods of the respective cars did not render their coupling in the ordinary and usual way dangerous. On the contrary, the defendant not only conceded but introduced testimony tending to show that it had in use on its road many different kinds of cars, some without any dead-woods

whatever. That, in addition, there came on its road, in the regular course of business, cars from other railroads, differing in their height, method of construction and mode of coupling.

"It sought to show that these facts were well-known to the plaintiff and to the members of the various switching crews, who, as a part of their work, were obliged to couple and uncouple cars for distribution from the yard in East Buffalo to various other points in the city, and for collection from the yards of other railroads for the purpose of making them up into solid trains to go east. Its object was to bring the plaintiff within the rule, that an employe who enters upon the discharge of duties which he understands to be dangerous, and continues in such employment after becoming fully aware of the faults of construction which render his work particularly hazardous, will be deemed to have assumed all the obvious risks incident to such employment.

"This being the ground on which the defendant mainly claimed freedom from liability, the plaintiff was, nevertheless, permitted to show, after he had rested his case and on the cross-examination of one of the defendant's witnesses against the objection of the defendant, that similar accidents had occurred on defendant's road prior to the one in question.

"It is not seen how this evidence could have any legitimate bearing on the questions in issue, while it may have had the effect to encourage the jury to give a larger verdict against the defendant than they otherwise would.

"It is the general rule that proof of similar accidents is not. admissible in evidence. This rule has exceptions, it is true.

"In *Pomfrey* v. *Village of Saratoga Springs* (104 N. Y. 459), a witness who was testifying as to the condition of the sidewalk at the time of the injury, which was the subject of the action, was permitted to testify that he had fallen there himself, and it was held to be competent because it tended to show how he came to know the condition of the sidewalk.

"It has been held that such evidence is competent in a class of cases where it is important to show that the defendant had notice or was warned of the dangerous character of municipal sidewalks, or of the inadequacy of facilities provided for the

passage of passengers to and from trains over the company's premises. (*Gillrie* v. *City of Lockport*, 122 N. Y. 403 ; *Brady* v. *Manhattan Railway Co.*, 127 id. 46.)

" But the exceptions to the rule have not been and should not be so far extended as to permit such testimony in a case where it can have no bearing whatever on the issues; otherwise the general rule, which is well grounded, would be overthrown.

" In the case before us it did not tend in any degree whatever to the establishment or support of plaintiff's cause of action to show that the defendant had knowledge of the dangers incident to the coupling of cars, such as those which were the occasion of plaintiff's injury.

" It follows that a reversal of the judgment is required and we need not consider the other questions presented.

" The judgment should be reversed."

*John G. Milburn* for appellant.

*Ernest K. Weaver* for respondent.

PARKER, J., reads for reversal.
All concur, except POTTER and VANN, JJ., not voting.
Judgment reversed.